UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CITY OF ST. PETERSBURG, FLORIDA,
a municipal corporation,

       Plaintiff,

v.                                 Case No.:  8:07-cv-02105-T-24-MSS

BRIGHT HOUSE NETWORKS, LLC

       Defendant.

_____/       **Consolidated With**

CITY OF TAMPA, FLORIDA,
a municipal corporation,

       Plaintiff,

v.                                 Case No.:  8:07-cv-02106-T-23-TBM

BRIGHT HOUSE NETWORKS, LLC

       Defendant.

_____/

## O R D E R

      This cause comes before the Court on the parties' cross motions for summary judgment. (Doc. Nos. 28, 38, 39, 48).  Plaintiffs, the Cities of St. Petersburg and Tampa (collectively, "the Cities"), have brought this suit for a declaratory judgment that Defendant Bright House Networks' ("BHN") realignment of its public, educational, and government access ("PEG") programming from analog to digital channels, which occurred on December 11 and 12, 2007, violated the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 543(b)(7)(A), and franchise agreements.

I.      **Background**

The undisputed facts are as follows: Bright House Networks, or its predecessors, has

provided cable television services to the Cities of St. Petersburg and Tampa pursuant to franchise

agreements since 1989, and since 2000, respectively.  Those agreements required BHN to

designate a channel for PEG use as a part of its basic cable service.

Before December 11, 2007, BHN offered its subscribers in Tampa a 27-channel basic

service for $13.74 per month.  Among other channels, the basic service contained PEG

programming on channels 15, 18, 19, 20 and 21.   In St. Petersburg, BHN offered a 25-channel

basic service for $13.45 per month, which contained PEG programming on channels 14, 15, 18,

19, and 96.  To view these PEG channels, subscribers were required to have a cable-ready

television or, if they owned an older Very High Frequency-only ("VHF") television set, they

were required to have an analog converter.  BHN rented analog converter boxes to subscribers

who did not own that equipment.[1]

This dispute arose when, in August 2007, BHN notified the Cities that it planned to

realign its channels in the Tampa Bay service area in order to compete more effectively with the

Direct Broadcast Satellite companies that were transitioning to an all-digital format.  BHN

implemented its channel realignment on December 11 and 12, 2007, expanding its basic service

tiers in both Tampa and St. Petersburg to include both analog and digital channels.  As a part of

this realignment, BHN also moved its PEG channels to the digital portion of the basic tiers.  The

---

[1]As of December 10, 2007, BHN rented nearly 900 analog converters for $0.39 monthly
to Tampa subscribers who own VHF-only televisions, so that they could receive programming
on channels beyond the VHF channels (channels 2-13), including the PEG channels.  Likewise,
in St. Petersburg, BHN rented at least 1,500 analog converters to subscribers there for the same
monthly price.

PEG programming now is transmitted in digital form on channels 614, 615, 620, 949, and 950 in

Tampa, and on channels 614, 615, 622, and 620 in St. Petersburg.

To view digital channels (now, including the PEG channels), a cable subscriber must

either have a digital cable-ready television set (with a QAM tuner), or a digital-to-analog

converter box.  Such converters can be purchased from electronics retailers or can be leased from

BHN.  BHN leases digital-to-analog converters to its subscribers who do not subscribe to a

higher level of digital service for $1.00 per month so that the subscriber can view the digital

channels (including the PEG channels) on the basic tier.

The Cities allege that BHN's relocation of PEG programming to digital channels on its

basic service tier violates 47 U.S.C. § 543(b)(7)(A), which they submit obligates BHN to provide

subscribers access to PEG channels on its basic service tier without imposing an additional

charge for equipment necessary to receive digital signals.  The Cities allege that BHN's action

will cause them to incur substantial expense in re-branding their government access channels and

equipping the television sets in City offices to receive the digital channels.  Furthermore, they

allege that the realignment will impair the Cities' ability to provide public interest programming

to a substantial number of BHN subscribers.

The Cities seek a declaration that BHN is required under 47 U.S.C. § 543(b)(7)(A) to

provide all subscribers with the PEG channels as part of a basic service tier and that BHN is

prohibited from charging subscribers for equipment–in addition to the monthly cost for the basic

service tier–in order to access the PEG programming.

II.     **Standard of Review**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure

3

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Johnson v. Bd. of Regents*, 263 F.3d 1234, 1243 (11th Cir. 2001) (quotations and citation omitted).

## III.    Discussion

The Cities move the Court to declare that, pursuant to the plain meaning of 47 U.S.C. § 543(b)(7)(A), BHN is required to continue to provide a basic service tier, which includes access to PEG channels at no additional charge.  Section 543(b)(7)(A) provides that "[e]ach cable operator of a cable system shall provide its subscribers a separately available basic service tier" that consists of "[a]ny public, educational, and governmental access programming required by the franchise of the cable system." The Cities contend that charging subscribers a monthly rental fee for a converter box–in addition to the basic service fee–in order to receive PEG channels is inconsistent with Congressional intent that PEG channels be available on the lowest-priced basic service tier.

The Cities cite legislative history emphasizing the importance of PEG channels.  They cite a Congressional report that states that "PEG channels . . . contribute to an informed citizenry by bringing local schools into the home, and by showing the public local government at work." H.R. Rep. No. 98-934, 1984 U.S.C.C.A.N. at 4667 (1984).  The legislative history further

reflects the Congressional belief that "[b]ecause of the interests served by PEG channels, . . . it is appropriate that such channels be available to all subscribers on the basic service tier and at the lowest reasonable rate."  H.R. Rep. No. 102-628 at *85 (1992).

BHN, however, contends that it is exempt from regulation under § 543(b)(7)(A), including any regulation of the content of the basic service tier or the fees charged for converter boxes, because the Federal Communications Commission ("FCC") has found that BHN is subject to "effective competition" in both St. Petersburg and in Tampa.

Section 543 provides the authority for local municipalities to regulate a cable operator's rates: "No federal agency or State may regulate the rates for the provision of cable service except to the extent provided under this section . . . ." 47 U.S.C. § 543(a)(1).  This rate regulation authority encompasses cable operator charges for equipment like converter boxes.  *See* 47 U.S.C. § 543(b)(3)(A) ("The regulations prescribed . . . under this subsection shall include standards to establish . . . the price or rate for . . . installation and lease of the equipment used by subscribers to receive the basic service tier, including a converter box . . . .").  And, it also includes the requirement in § 543(b)(7)(A) that rate-regulated cable operators provide a "separately available basic tier . . . [that includes] [a]ny public, educational, and governmental access programming required by the franchise of the cable system to be provided to subscribers."  However, these rate-regulation provisions do not apply when the FCC has found that "effective competition" exists in the area:  "If the [FCC] finds that a cable system is subject to *effective competition*, the rates for the provision of cable service by such system *shall not be subject to regulation by the [FCC] or by a State or franchising authority under this section*."  47 U.S.C. § 543(a)(2) (emphasis added).

5

As BHN argues, that is the case here.  The FCC found that BHN was subject to "effective competition" in St. Petersburg on March 18, 1997 and in Tampa on March 1, 2007.[2]  Those findings were based on a showing that there were "at least two unaffiliated multichannel video programming distributors [("MVPD")] each of which offer[ed] comparable video programming to at least 50 percent of the households in the franchise area" and that more than 15 percent of the households "subscrib[e] to programming services offered by [MVPDs] other than the largest multichannel video programming distributor." 47 U.S.C. § 543(l)(1)(B).

Under the plain terms of the statute, § 543(b)(7)(A) does not apply to BHN in St. Petersburg and Tampa because the FCC has found that BHN is subject to effective competition in those areas.  *See Warner Cable Commc'ns. v. Niceville*, 911 F.2d 634, 641-42 (11th Cir. 1990) (explaining that Section 623 of the Cable Act authorizes the FCC to prescribe rules governing a franchisor's rate regulation where the cable provider is not subject to effective competition) (citing 47 U.S.C. § 543(a)(2)).  The FCC has explained that "if a cable system faces effective competition . . . and is deregulated pursuant to a Commission order, the cable operator is free to place a broadcaster's digital signal on upper tiers of service or on a separate digital tier." *Carriage of Digital Television Broad. Signals*, 16 F.C.C.R. 2598, 2643 ¶ 102 (2001).  The FCC recognized that Section 543(b)(7) "is one of those rate regulation requirements that sunsets once competition is present in a given franchise area." *Id*.[3]

---

[2]The Court takes judicial notice of the FCC orders filed by BHN.

[3]Furthermore, in its orders, the FCC revoked the Cities' certification of rate regulation authority.  And, the Cities do not dispute the fact that after the FCC's findings of effective competition, they have not sought or obtained any new certifications from the FCC to regulate BHN's rates.  Accordingly, neither City has the authority to regulate BHN's charges for converter boxes or its basic service tier under that statute.

The Court is not persuaded by *City of Dearborn v. Comcast of Michigan*, 558 F. Supp. 2d 750 (E.D. Mich. 2008), a January 14, 2008, decision from the U.S. District Court for the Eastern District of Michigan, which was cited by the Cities.  In that case, the court granted a temporary restraining order in favor of the city that prohibited the cable company from moving PEG channels to a digital format.  *Id.* at 760.  The court found that it "may be unreasonable" to burden customers who subscribe to the basic service tier with the additional cost of renting a converter box in order to view PEG channels.  *Id.* at 757.  While that case presents issues similar to the ones presented here, it has little persuasive value because it was not a decision on the merits and because the court offered very little analysis in finding that the costs "may be unreasonable." Notably, the Michigan court has since stated that it intends to refer the issues to the FCC.  *City of Dearborn v. Comcast of Mich.*, No. 08-10156, 2008 U.S. Dist. LEXIS 77755, at *30-31 (E.D. Mich. Oct. 3, 2008).

Furthermore, the Court is not persuaded by the Cities' argument that BHN's realignment contradicts the Congressional intent that PEG channels be made available at the lowest reasonable rate.  The Court need not look to the legislative history of Section 543 because its language is plain and unambiguous.  *Harry v. Marchant*, 291 F.3d 767, 772 (11th Cir. 2002). Nevertheless, the legislative history supports BHN's position because the same House Report the Cities cite emphasizes "the preference of Congress for competition rather than regulation" and makes clear that, pursuant to Section 543(a)(2), "where the FCC finds that a cable system is subject to effective competition, there shall be no regulation of any of the system's rates by any level of government."  H.R. Rep. No. 102-628, at *80.

Additionally, BHN argues that § 610.109(6) of Florida's Consumer Choice Act of 2007

explicitly authorizes it to place government access channels on a digital tier.  The Court agrees.
The CCA provides that "[a]fter July 1, 2007, an incumbent cable or video service provider is
immediately eligible . . . to apply for a state-issued certificate of franchise authority."  Fla. Stat. §
610.105(1).  Once the Florida Department of State issues a certificate, "[t]he applicable
municipal or county franchise is *terminated*," and "any obligation under any existing municipal
or county franchise that exceeds the obligations imposed on the certificateholder shall be against
public policy and *void*."  *Id.* § 610.105(1) and (2) (emphasis added).  The CCA requires a
certificateholder to continue to provide the number of government access channels carried under
its franchise.  *Id.* § 610.109(2).  However, it also provides that "[a] cable or video service
provider may locate any public, educational, or governmental access channel *on its lowest digital
tier of service* offered to the provider's subscribers."  *Id.* § 610.109(6) (emphasis added).

BHN applied for a state-issued certificate of franchise authority on December 17, 2007.
The Florida Department of State issued it a certificate covering St. Petersburg and Tampa on
December 26, 2007.[4]  Thus, the franchises that the Cities had granted to BHN were terminated
on that date, and any purported requirement they would seek to enforce that exceeds the statutory
requirements of the CCA is void.  *See Capital Infrastructure, LLC v. Hernando County*, No. 06-
1347, 2007 WL 3202678, at *2 (M.D. Fla. Oct. 29, 2007) ("The former [§ 610] granted the
County the authority to enforce cable franchises.  The newly enacted CCA took that authority
away.").

The CCA expressly permits the very thing that the Cities complain that BHN has
done–locating government access channels "on its lowest digital tier of service."  Fla. Stat.

---

[4]The Court takes judicial notice of the certificate of franchise authority filed by BHN.

8

610.109(6).  For purposes of this provision of the CCA, it does not matter that BHN only became a state-franchised certificateholder after the Cities filed their complaints.  Under § 610.109(6), *any* cable operator–not only state-franchised certificateholders–may place PEG programming on its lowest-priced digital service tier.  Moreover, the CCA became effective on May 18, 2007, months before the Cities filed suit or BHN relocated its PEG programming.  Finally, the Cities have not made any convincing argument that these provisions of the CCA are preempted by federal law or are unconstitutional.

Accordingly, the Court concludes that BHN is entitled to summary judgment because 47 U.S.C. § 543(b)(7)(A), the statute on which the Cities base their claim, does not prohibit BHN from placing PEG programming in a digital format and charging subscribers to rent digital-to-analog converter boxes.  Furthermore, to the extent that the Cities rely on BHN's franchises, those franchises have been terminated by operation of the CCA and the certificate of franchise authority issued to BHN on December 26, 2007.  The Court notes that BHN's realignment of the PEG channels is an inevitable step in the transition from video signals delivered in analog form to ones delivered in digital form.  Indeed, Congress has mandated February 17, 2009 as the last day that television broadcasters may transmit signals in analog rather than digital form.  47 U.S.C. § 309(j)(14).

**IV.      Conclusion**

For the foregoing reasons, the Cities' Motion for Summary Judgment is **DENIED**, and

BHN's Motion for Summary Judgment is **GRANTED**.  The Clerk is directed to enter judgment

in favor of Defendant Bright House Networks, and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 12th day of December, 2008.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record